UNITED STATES *v*. E. LEITZ, INC. (NO. 3992)[1]

United States Court of Customs and Patent Appeals, October 26, 1936

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *John J. McDermott*, special attorney, of counsel), for the United States.

*Walden & Webster* (*Edward F. Jordan* of counsel) for appellee.

[Oral argument October 8, 1936, by Mr. Lawrence and Mr. Jordan]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, holding certain "photo-micrographic cameras for photo-micrographing metals" and other articles, and certain so-called lamps, separately imported, essential parts of the cameras, dutiable as photographic cameras and parts thereof at 20 per centum ad valorem under paragraph 1551 of the Tariff Act of 1930, as claimed by the importer, rather than the cameras as microscopes or optical instruments or frames or mountings therefor or parts thereof at 45 per centum ad valorem under paragraph 228 (b) of that act, and the lamps as manufactures of metal, not specially provided for, at 45 per centum ad valorem under paragraph 397 of that act, as held by the collector at the port of New York.

Counsel for the Government, although insisting that the collector's classification was correct, suggest that the involved instruments might well be held to be dutiable at 60 per centum ad valorem under paragraph 228 (a) of the Tariff Act of 1930, as "optical measuring or optical testing instruments."

The paragraphs, so far as pertinent, read:

PAR. 228. (a) * * * optical measuring or optical testing instruments, testing or recording instruments for ophthalmological purposes, frames and mount-

---
[1] T. D. 48622.

ings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, 60 per centum ad valorem.

(b) Azimuth mirrors, parabolic or mangin mirrors for searchlight reflectors, mirrors for optical, dental, or surgical purposes, photographic or projection lenses, sextants, octants, opera or field glasses (not prism binoculars), telescopes, microscopes, all optical instruments, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, not specially provided for, 45 per centum ad valorem.

PAR. 397. Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

PAR. 1551. Photographic cameras and parts thereof, not specially provided for, 20 per centum ad valorem: *Provided,* That if the photographic lens is the component of chief value of the camera or of the part in which it is imported such camera or part, including the photographic lens, shall be dutiable at the rate applicable to such photographic lens when imported separately; * * *

The merchandise involved was described by the witnesses in the case, and is also illustrated by Illustrative Exhibits A, B, and C. The so-called lamps are marked [Exhibit] No. 1, in Illustrative Exhibit B.

It is conceded by counsel for the parties that the photographic lens in each of the exhibits is not the "component of chief value."

Illustrative Exhibits A and B are essentially the same, except that Illustrative Exhibit A is a smaller and less expensive instrument. Each is equipped with a "compound lens system", consisting of "two lenses, an objective, and an eye-piece", known as a microscope.

With regard to Illustrative Exhibit B, the importer's witness, H. Wolfgang Zieler, testified as follows:

A. The entire unit is used for taking photo-micrographs. A photo-micrograph is an enlarged photographic record of a small object. In order to produce an enlarged record of a small object one requires some illumination, because the picture is so much larger than the object. *Therefore, we have a lamp as a part of the camera;* and when you take an enlarged record it is not only the picture which is enlarged, but also any disturbance which may come in; for instance, vibration from the room. *So, in order to be able to take a large photograph of a small object you must make provision to absorb the vibrations. So it has a stand for vibrations.*

* * * * * * *

A. Then we need an optical system to produce the enlarged image. In the illustration of Illustrative Exhibit B this optical system happens to be a microscope stand. If the enlargement of the picture is excessive, beyond 30 or 40 times we do not require the microscope. In fact *when these cameras are used* they are used sometimes with the microscope, or sometimes with a photographic lens. You can take, for instance, a photo-micrographic record.

* * * * * * *

Q. In what respect does that differ from an ordinary enlarging camera?—A. *Simply in so far as you have a compound lens system which we call a microscope. That means a combination of two lenses, an objective, and an eye-piece.* They form

one optical unit, which is able to produce images at higher magnification than we conveniently can produce with a single photographic lens. If I would make a photographic camera with a bellows of *20 or 25 feet I would not need a microscope.*

Q. That is not probable?—A. That is not probable. Therefore, in order to make the magnification process more convenient we select the stronger optical system, which permits us to select a shorter bellows, so that we can have the photo magnification obtained at greater convenience.

\* \* \* \* \* \* \*

Q. In an enlarging camera you likewise take a large picture of a small object?—A. Yes, sir.

Q. But perhaps not to the magnified extent as in this case?—A. At least the extreme of magnification possible with this equipment is very much higher than the extreme that you can reach in the enlarging camera; but the lower extreme being used in these cameras is very well within the range of the higher extreme of the enlarging camera. An enlarging camera will go up to 15 times magnification. There are many photomicrographs taken with this camera within the range up to 10, 50, 100, 1,000, and 2,000. So the ranges of magnification more or less overlap.

Q. Referring to the bellows of B, which you have marked "No. 2", if you detach the microscope from that and put a photographic lens in, could you use that the same as an ordinary camera?—A. Yes, sir. [Italics ours.]

There is no evidence in the case to contradict the testimony hereinbefore quoted.

It appears from the record that Illustrative Exhibit C is a photomicrographic camera of a different type; that it does not require shock absorbers, because it is a small instrument and may be moved from place to place, whereas the instruments represented by Illustrative Exhibits A and B are used in large factories where vibrations are prevalent; that it is sometimes used with an ordinary photographic lens, but more frequently with a so-called microscopic lens with which it is designed to be used; that it is almost identical with an "enlarging camera," and is known as such; and that although it is used mostly for the purpose of taking photographs of biological specimens, it is also used in many other types of scientific work, such as, obtaining—

records of small objects of great importance—of insects, of minerals, of fractures, of metals, of almost any type of object of which you want to obtain a record; and this, what we call low-power photo-micrography or photography at slight magnification, is almost as important as the high-power photography.

Counsel for the Government relied upon the decisions of this court in the cases of *United States* v. *Clay Adams Co., Inc.*, 20 C. C. P. A. (Customs) 285, T. D. 46078, and *Ferner* v. *United States*, 23 C. C. P. A. (Customs) 62, T. D. 47735.

In the *Clay Adams Co.* case, *supra*, this court held that an instrument which consisted of a microscope and a projecting apparatus, in combination, was intended to be more specifically provided for as an optical instrument under paragraph 228 (b) of the Tariff Act of 1930, rather than as scientific instruments under paragraph 360 of that act.

In the case of *Ferner* v. *United States, supra,* we held that certain devices designed to be used for the purpose of "accurate measurements and measurement comparisons," a full description of which is unnecessary, were dutiable as optical measuring or optical testing instruments under paragraph 228 (a) of the Tariff Act of 1930, rather than as machines under paragraph 372, scientific instruments under paragraph 360, electrical articles under paragraph 353, or optical instruments under paragraph 228 (b) of that act.

The trial court quoted the testimony *in extenso,* distinguished the issues in the case at bar from those involved in the decisions relied upon by counsel for the Government, and concluded that the instruments in question were photographic cameras; that the so-called lamps, hereinbefore referred to, were parts of such cameras; and that all were dutiable under the provisions of paragraph 1551, *supra.*

After a careful consideration of the record in the case, we find ourselves in entire accord with the conclusion reached by the trial court. The instruments and the parts involved are obviously included within the provisions of paragraph 1551 for photographic cameras and parts thereof, and are more specifically provided for therein than as optical instruments or frames or mountings therefor, or parts thereof, under paragraph 228 (b), *supra.* Furthermore, there is nothing of record to indicate that either the instruments or the parts thereof in question were designed to be, or were, used as optical measuring or optical testing instruments.

Under all the circumstances, we deem a further discussion unnecessary. Accordingly, the judgment of the trial court is *affirmed.*